## ELMER LEACH v. THE STATE.

### No. 894.     Decided June 26th, 1896.

**1.   Constitutional Law—The Judicial System—Changes in.**

It was evidently the object of the framers of Art. 5, of our Constitution, to make out a complete judicial system, defining generally the province of each of the courts by reference to the objects confided to the action of each, and the relation of each to the others. Such a system cannot be changed by the legislative department except, where the power to make the change is conferred by the Constitution itself.

**2.   Same—Creation of "Other Courts"—City Courts.**

"The power conferred upon the legislature, by Sec. 1, of Art. 5, of the Constitution, to establish such other courts, as it may deem necessary, has reference to those courts which, if created by the legislature, would constitute a part of the judicial power of this State." Municipal courts created as incidental to a municipal charter are not courts within the contemplation of the provisions of said article.

**3. Same—Municipal Courts—Their Jurisdiction.**

Under the terms of our Constitution, municipal courts can only be created for municipal purposes and as incidental to municipal corporations and their judicial power is limited to the enforcement of municipal ordinances and regulations within the municipality. The legislature cannot confer upon such courts jurisdiction concurrent with the State courts over violations of the State laws within the city limits.

**4. Same—Style of all Writs and Process—Judgments.**

By provisions of Sec. 12, Art. 5, of the Constitution, the style of all writs and process shall be, "The State of Texas," and all process shall be carried on in the name and by the authority of the State of Texas, and shall conclude "against the peace and dignity of the State." Held: That a City Court created with power to try offenses against the laws of the State, to issue process in the name of the city and concluding "against the peace and dignity of the city," is in violation of said article and its judgments for such offenses are nullities.

**5. Same—Right of Appeal.**

The creation of a City Court to try offenses against the laws of the State, which limits the right of appeal to cases where the fine imposed is $20, or more, and depriving the party convicted of such right in all cases of a lesser fine, is in violation of the Constitution which gives the right of appeal from the County Court in such cases to the Court of Criminal Appeals.

**6. Unlawfully Carrying a Pistol—Former Conviction.**

On a trial in the County Court for unlawfully carrying a pistol, defendant pleaded that he had been formerly convicted of said offense in the City Court of Fort Worth. Held: That the special charter creating the City Court of Fort Worth, with power to try offenses against the laws of the State is unconstitutional, and the judgments of said court were nullities, and the plea of former conviction was properly overruled. HURT, Presiding Judge, dissenting.

APPEAL from the County Court of Tarrant. Tried below before Hon. GEORGE W. ARMSTRONG, County Judge.

This appeal is from a conviction for unlawfully carrying a pistol, the punishment being assessed at a fine of $25.

Defendant pleaded former conviction for said offense, in the City Court of Fort Worth, which plea was overruled.

No further statement necessary.

[No brief for either party have come to the hands of the Reporter.]

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted in the County Court of Tarrant County of carrying on and about his person a pistol. He had been previously convicted for the same offense in the City Court of Fort Worth, and, in bar of the prosecution in the County Court, pleaded the conviction had in the City Court. The plea of jeopardy was overruled, and the action of the court in this respect is presented as the only question for our decision in this case. The question is, did the legislature have the authority to confer upon the City Court of Fort Worth jurisdiction to try acts violative of the criminal laws of the State of Texas? By the act of March 20th, 1889, a special charter was granted the city of Fort Worth, and, among other things, said charter provided that the judicial power of said city be vested in a court known as the "Fort Worth City Court," presided over by a judge to be known as

the "City Judge," and given criminal jurisdiction as follows: "(1) To try and punish all misdemeanors over which the Recorder's Court of Fort Worth now has jurisdiction. (2) To try, determine, and punish all misdemeanors arising under the provisions of this charter; to have concurrent jurisdiction with the State courts over all misdemeanors against the laws of the State, committed within the city limits, except theft, swindling, aggravated assault, aggravated assault and battery, keepers or exhibitors of such games as are prohibited by law, and matters involving official misconduct; and to have exclusive jurisdiction over any violation of the Sunday laws, between the hours of 12 o'clock Saturday night and 9 o'clock Sunday morning, and between the hours of 4 o'clock P. M. Sunday and 12 o'clock Sunday night." Civil jurisdiction was prohibited this court, except in the forfeiture and collection of bonds. Section 28 of said charter provides, that "all processes of said court shall run in the name and by the authority of the city of Fort Worth, and shall conclude, against the peace and dignity of the city.  *  *  *  The style of process shall be The City of Fort Worth." Section 31 provides, "No appeal shall lie from this court, unless the fine is twenty dollars or more, and then only to the Court of Appeals." In so far as the charter sought to confer exclusive jurisdiction of State cases upon said City Court, it was held in Ginochio's case, 30 Tex. Crim. App., 584, that said charter was void, and it was further held that the legislature had no authority to divest the Justice Court of the power and jurisdiction conferred upon it by the constitution. The question of the authority of the legislature to confer upon said City Court jurisdiction concurrent with State courts, over violations of the State laws, was not discussed in that case, but was expressly pretermitted. Sec. 1, Art. 5, of the Constitution, ordains, that "the judicial power of this State shall be vested in one Supreme Court, and Courts of Civil Appeals, in Courts of Criminal Appeals, in District Courts, in County Courts, in Commissioners' Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law.  *  *  *  The legislature may establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto." Section 16 of this article confers upon the County Court original jurisdiction of all misdemeanors, except those involving official misconduct, and those in which exclusive original jurisdiction is given to the Justice Court. Section 19, of said article, confers jurisdiction upon the Justice Court, in criminal matters, of all cases where the penalty or fine imposed by law may not exceed $200, with right of appeal from the judgment in said court in all criminal cases, without reference to the amount of the fine imposed in said court. Section 22, of the said article, provides that the legislature may, by local or general law, increase or diminish or change the civil and criminal jurisdiction of the County Court. The powers of the legislative, judicial and executive departments of the government of this State are each, by Article 2, of the Constitution, protected from encroachment by one

upon the others, and the powers conferred upon each cannot be infringed or abrogated by either or both of the co-ordinate branches of the government.    It is not necessary to discuss this question.    It is a plain, positive provision of the Constitution.    In framing the provisions of Article 5, "it was the object of the framers of the Constitution to mark out a complete judicial system, defining generally the province of each of the courts by reference to the objects confided to the action of each, and the relation of each to the others.    Such a system cannot be changed by action of the legislative department, except when the power to make the change is conferred by the Constitution itself."    Ex parte Towles, 48. Texas, 414; Ex parte Ginnochio, 30 Tex. Crim. App., 584; Gibson v. Templeton, 62 Texas, 555, and authorities cited.    It follows, therefore, that the courts designated in Article 5, cannot be abrogated by legislative enactment, because the power has not been conferred in the Constitution to do so.    That "such other courts" may be established as are deemed necessary, their jurisdiction and organization prescribed, and the jurisdiction of the district and other inferior courts made to conform to such changes in the judicial system, does not authorize the abrogation of the courts specified in Article 5.    The authority to create additional courts has reference to those courts which, if created by the legislature, would constitute a part of the "judicial power of this State."    It has no reference to courts created as incidental to the charter of a municipal corporation which has been brought into existence under the provisions of Article 11, of the Constitution, for it is by virtue of this article of the Constitution that municipal charters are authorized to be created by the legislature.    The municipal court, being but an incident to a municipal corporation cannot exist without the corporate charter.    Such courts are not courts, within the contemplation of the provisions of Article 5, which provides for the judicial system of this State; for if so, they could exist independent of the municipal charter, and exercise authority as municipal courts in the absence of such a charter, and independent of the municipality.    This article, creating the judicial system of the State, has reference to State courts, as contradistinguished from municipal courts. If this were not so, the creation of a municipal corporation would be a necessary and prerequisite step to the exercise of legislative authority, under Article 5, in creating or establishing such municipal courts.    This is not the case.    If the legislature may delegate authority to a municipal court in one town to enforce the general laws of the State, it may do so in every town; and, if it can confer authority upon said courts to take jurisdiction of one misdemeanor, then it may do so as to all this class of offenses.    If as to misdemeanors, then the reasoning would be equally as cogent that it could do so as to all felonies; for there is no constitutional objection in the way as to one class of offenses that does not obtain equally as to all classes of offenses.    If this power can be delegated to a municipal court in matters appertaining to criminal cases, then it can be so delegated with equal propriety to all classes of civil actions; and we should have the anomalous condition of a municipal court exer-

cising concurrent original jurisdiction in civil and criminal cases throughout the State at the same time with District Courts, County Courts, and Justice Courts, and also at the same time could be made to exercise appellate jurisdiction co-extensive with District and County Courts. Hence, such jurisdiction would be original with District, County and Justice Courts, and at the same time appellate, without conforming the jurisdiction of the constitutional courts to that conferred upon the municipal courts. Art. 5, § 1. It is no answer to this that the legislature had not so provided, or that it may not do so. If the power be conceded, then that body may, at its option, exercise such authority; and, if such authority in law does exist, the legislature could constitutionally and rightfully confer jurisdiction upon them, as trial courts, or even appellate courts, in inferior appeal cases, without conforming to the plain demands of the constitution. Again, if municipal courts are instituted by virtue of, and under the provisions of, Article 5, then it would be prerequisite to their creation that a municipal charter be first granted, under Article 11, else Article .5 could not be made operative so as to authorize the legislature to create said court under the general term, "such other courts," specified in Article 5. This authority, as I understand the constitution, does not and cannot exist, and the legislature went beyond its authority in conferring such jurisdiction upon the Ft. Worth City Court. In Louisiana, under the constitutional provision declaring, "The judicial power shall be vested in a Supreme Court, in Districts Courts, and in Justice of the Peace Courts" (Const. 1845, Art. 62), an act conferring judicial powers on a mayor of a city was considered void, and it was held that for violation of its ordinances the city should resort to the judicial tribunals organized under the Constitution; citing, Lafon v. Dufrocq, 9 La. Ann., 350. The true rule should be, and is, I think, where the organic law provides that the judicial power of the State shall be vested in specified courts, and such other courts as may be authorized by the terms of such organic law to be created by the lawmaking power, that this does not prohibit the creation of municipal courts for the enforcement alone of municipal ordinances and regulations. See, Blessing v. City of Galveston, 42 Texas, 641; State v. Young, 3 Kan., 445; Hutchings v. Scott, 9 N. J. Law, 218; Shafer v. Mumma, 17 Md., 331; Mayor, etc., v. Dechert, 32 Md., 369; Montross v. State, 61 Miss., 429. In other words, under the terms of our Constitution, municipal courts can only be created for municipal purposes, and as incidental to municipal corporations, and their judicial power is limited to the enforcement of municipal ordinances and regulations within the municipality. It will be observed that no action was taken by the legislature, in creating the charter of the city of Fort Worth, with reference to the jurisdiction of the County Court or the Justices' Courts of Tarrant County, in regard to changing, increasing, altering, or diminishing the jurisdiction of said court. But if this had been done, and the law had sought to adjust the relations of said courts and the City Court, it still would not have affected the question, because, as before stated, the legislature is not

authorized to invest said City Court of Fort Worth with jurisdiction to try violations of State laws. The mayor, recorder, city judge,—by whatever name such municipal officer may be called,—is not a State officer. Dill. Mun. Corp. §§ 58, 427 et seq., and notes; State v. Valle, 41 Mo., 29. The City Judge of Fort Worth is elected, under the provisions of the city charter of Fort Worth, at a municipal election, and not at any general election for State officers. He is a city officer,—a municipal officer. See, city charter of Fort Worth, § 28a, and authorities above cited. Again, the charter under consideration requires all process, in cases of violation of State laws cognizable before said City Court, to run in the name of the city of Fort Worth. Its process shall conclude against the peace and dignity of the city, and prosecutions in said court shall be carried on in the name of the city of Fort Worth. Fort Worth City Charter, § 28. That the legislature has the authority to provide that writs and process from said City Court should run in the name of the city, and the prosecutions to be carried on in its name, may be conceded, in so far as violations of the city ordinances and regulations are concerned; but this could not be done as to State offenses, for the simple reason that Article 5, § 12 of the State Constitution provides that the "style of all writs and process shall be, 'The State of Texas;' and all prosecutions shall be carried on in the name and by the authority of the State of Texas; and shall conclude against the peace and dignity of the State." It has uniformly been held—and could not be otherwise—that all criminal prosecutions for violations of State laws must be carried on "in the name and by the authority of the State of Texas," and they shall conclude "against the peace and dignity of the State," and that all writs of process issued from any court created by virtue of Article 5, and forming part of the judicial power of this State, must run in the name of the State of Texas. How any court could hold otherwise, I do not understand, unless it has first set at nought the plain, mandatory provisions of the Constitution which brought that court into existence. See, Bautsch v. City of Galveston, 27 Tex. Crim. App., 342; Ex parte Boland, 11 Tex. Crim. App., 159; City of Davenport v. Bird, 34 Iowa, 524. Not only does this charter of the city of Fort Worth seek to transfer the judicial power of this State to a municipal court, but it seeks, in terms, to confer authority upon said City Court to try a vast majority of the misdemeanor violations of the State laws, and has sought to set aside and abrogate the plain provisions and emphatic requirements of the Constitution, as set forth in Sec. 12, Art. 5, supra. See, Dill. Mun. Corp., § 429, note 1, for authorities. If this City Court is created by virtue of Art. 5, of the Constitution, then it must be obedient to its provisions. Its writs must run, and its proceedings must be carried on, in the name of the State of Texas; and the prosecutions therein carried on must begin in the name of the State of Texas, and conclude against the peace and dignity of the State, and not in the name of the city of Fort Worth, as provided by its charter. If the

court is a State court, a part of "the judicial power of this State," it exercises its authority by virtue of Article 5, and must be obedient to its command and provisions, in the exercise of that authority. This it cannot do under the terms of the charter, for that instrument makes no provisions for such process and prosecutions. If the court be but an incident to the charter, then it had no relation to Article 5 whatever, and cannot exercise authority in State cases. Whenever a party accused of a violation of the State penal statute is prosecuted, that prosecution must be carried on "in the name and by the authority, of the State of Texas," and conclude "against the peace and dignity of the State," and the legislature can no more abrogate this provision than it can abolish the Constitution itself, or the courts created under the Constitution. These provisions are superior to both the legislative and judicial departments of the government, and imperiously command obedience from both departments. Again, this city charter (Section 31) provides, "No appeal shall lie from this court, unless the fine is twenty dollars or more, and then only to the Court of Appeals." This is a violation, also, of the Constitution, as I understand the reading of that instrument. As before observed, if the charter of the city of Fort Worth is valid in respect to the question under discussion, then it is plain that it has authority to try criminal causes violative of State laws; concurrent with the County Court and Justice of the Peace Court. Some of the causes over which it can exercise jurisdiction may be tried only in the County Court originally. From the County Court, in such case, there lies an appeal to the Court of Criminal Appeals, in all criminal cases, whatever may be the amount of the fine, or whatever may be the punishment assessed—whether that be below or in excess of $20. From convictions in the Justice Court there lies an appeal to the County Court, or, as the case may be, to the District Court, in case the County Court does not exercise jurisdiction in the given county, in all criminal cases tried in said Justice Court, without reference to the amount of the penalty or fine imposed; but in that appellate tribunal the judgment upon a trial de novo becomes final unless the amount of the fine imposed should be in excess of $100. So it will be seen that whether the prosecution originates in the Justice of the Peace Court, or in the County Court, the party convicted upon the original trial is entitled to his appeal to some court, without reference to the amount of the fine imposed. With reference to the provisions of the city charter under discussion, it will be seen that an appeal from said court is absolutely prohibited, unless the fine should be $20 or more. Thus the legislature has sought to deprive a party accused, under the State law, of a violation of said law, of his right of appeal; and, if the law is a valid one, that body has succeeded in depriving every person who may be tried in the City Court of Fort Worth, and whose fine has been fixed at $20 or less, of the right of having an appellate tribunal pass upon the questions involved in his case. I think it would take no reasoning to show this provision of the charter to be void. While not expressing any opinion upon that phase

of Section 31 which limits the right of appeal "only to the Court of Appeals," we would call attention to the anomalous condition in which a party appealing from said City Court might be placed. The "Court of Appeals" has no existence, and has had none since the recent amendments to the Constitution. See, Cummings v. State, 31 Tex. Crim. Rep., 406, and numerous subsequent decisions. If, upon an investigation of that question, it should be held, by reason of the requirement to appeal to the "Court of Appeals," an appeal could not lie from said City Court, because there exists no such court, then it would follow that in all cases tried in said City Court the constitutional guaranty of a right of appeal has been abolished by the terms of this charter. We, however, will not express an opinion on this question. From these views it follows that the City Court of Fort Worth was without authority or jurisdiction of the offense of which appellant was convicted, and its judgment imposing a fine upon him was a nullity. Appellant, therefore, was not in jeopardy when tried in said court, nor was he legally convicted, in said court, wherefore his plea in bar of the prosecution on the trial in the County Court was properly overruled. The judgment is affirmed.

*Affirmed.*

HURT, Presiding Judge, dissents.